UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Choon's Design, Inc.,

     Plaintiff,

                                   Honorable Victoria A. Roberts

v.                                  Case No. 14-10848

Tristar Products, Inc.,

     Defendant.

_____/

## ORDER ON CLAIM CONSTRUCTION

## I.    INTRODUCTION

At issue are Choon's Design Inc.'s ("Choon") 8,485,565 ("'565"), 8,684,420 ("'420") and 8,936,283 ("'283") patents ("Rainbow Loom") for a "Brunnian Linkmaking Device and Kit."  A fourth patent  -- the 8,622,441 ("'441") ("mini-loom") is a portable device to make similar products.

Choon says the Rainbow Loom has enjoyed much success and other companies, including Defendant Tristar Products Inc., ("Tristar") have copied its product.

Choon's loom is a kit described as containing a base and a pin bar or pin bars. Tristar's "Bandaloom" loom is one piece.  The parties dispute whether Choon's patents are broad enough to include a one-piece loom such that Tristar's Bandaloom infringes the Choon patents.

The parties agreed on eight terms across the four patents that the Court should construe, construction of which could aid settlement.  Oral argument was heard on September 21, 2015.  The terms, the patents, the parties' proposed construction and the Court's construction of those terms are set forth here:

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**Claim Construction Chart**

| Patent No. | Claim No. | Term | Choon's Construction | Tristar's Construction | Court's Construction |
|---|---|---|---|---|---|
| '565 | 1, 12 | base | the bottom of a structure | a structure for supporting one or more pin bars which can be mounted thereon in a desired spatial orientation | a structure separate from the pin bar(s); its purpose is to locate or support the pin bar(s) |
| '565 | 1, 12 | at least one pin bar / pin bar | a structure from which a plurality of pins extend | an integral structure separate and distinctly constructed article from the base, having a plurality of pins in a single row, spaced equally apart | "at least one" means "one or more"<br><br>"pin bar" means "an elongated member from which a plurality of pins extend" |

3

| Patent | Claim No. | Term | Choon's Construction | Tristar's Construction | Court's Construction |
|---|---|---|---|---|---|
| '565 | 1 | supported on | broadly, integral with or attached to | to hold up or serve as a foundation or prop for | the parties dispute for this term is resolved by construction of the terms "base" and "pin bar" |
| '565 | 12 | supporting at least one pin bar including a plurality of pins to a base to define a desired special relationship between at least two adjacent pins | holding at least one structure from which a plurality of pins extend to set an orientation between at least two adjacent pins, wherein the pin bar and base may be integral or separate | "supporting" and "at least one pin bar" and "base" same as above. Phrase "define a desired special relationship" is "user-selected combination of pin bars and bases to form a custom desired distance between pins" | "supporting" and "at least one pin bar" and "base" construed as above. The term "supporting at least one pin bar . . . to a base . . ." conveys no meaning. "adjacent pins" includes pins in the same bar or pins opposite each other when their respective bars are juxtaposed |

4

| Patent No. | Claim No. | Term | Choon's Construction | Tristar's Construction | Court's Construction |
|---|---|---|---|---|---|
| '565 | 1 | a top flared portion for holding a link in a desired orientation/ | the pins have a portion that projects outward near an end spaced from the base capable of holding a link in a desired orientation on the pin during creation of a linked item | "top flared portion" is "the flanged in order to keep the top of the pin" / an elastic band properly spaced and further designed to prevent the | "top flared portion" means "a flanged projection at or near the top of the pin" / "top portion" means "a portion at or near the top of the pin" |
| '420 | 1, 3 | a top portion for holding a link in a desired orientation | | "for holding a link in a desired orientation" is determined by a user-selected combination of pin bars and bases | The phrase "for holding a link in a desired orientation" does not require construction |
| '441 | 11 | at least one clip including inward facing ends...for securing ends of the series of links together/ | at least one connector that is capable of securing a series of elastic closed loops with the terminal portions proximate an opening for securing links together | "clip" is defined by its plain and ordinary meaning / "for securing ends of the series of links together" should not be accorded patentable weight. | "clip" means "connector" and "at least one clip" means "one or more connectors" / the structure ("clip") is construed so that it is capable of performing the recited function ("for securing . . ."). |
| | | at least one | a connector that is | | |

| Patent No. | Claim No. | Term | Choon's Construction | Tristar's Construction | Court's Construction |
|---|---|---|---|---|---|
| '441 | 11 | clip...for securing ends of a series of links together | capable of securing a series of elastic closed loops together | "clip including inward facing ends" is "a c-shaped clip" | "A series of links" means "a series of elastic closed loops" |
| | | | "a series of links" means "a series of elastic closed loops" | " a series of links" means "a continuous loop structure without performing an actual knot" | |
| | | each of the posts include an access slot defined between a first arm and a second arm/ | a slot extending between the two arms, and allowing for a tool to contact the links | an opening between two arms | each post has a pair of arms with a slot between them. |
| | | each of the posts include a first arm and a second arm and an access slot disposed there between | At the hearing the parties withdrew these terms from consideration | . | |

6

| Patent | Claim No. | Term | Choon's Construction | Tristar's Construction | Court's Construction |
|---|---|---|---|---|---|
| '565 | 1 | plurality of pins . . . | more than one structure capable of supporting a link in a single row on a pin bar. | two or more pins located in a single row on a pin bar. | Two or more pins. |
| | | for holding a link in a desired orientation | " . . . the specification does not require that the plurality of pins be in a single row on a pin bar." | the specification discloses "holding a link in a desired orientation" as being determined by the user-selected combination of pin bars and bases. | the structure ("pins") is construed so that they are capable of performing the recited function ("for holding a link in a desired orientation . . . ") |

7

## II.    Standard of Review and Guiding Principles in Claim Construction

The words of the patent claim define the invention to which a patentee may claim

the right to exclude other inventions. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.

Cir. 2005). Claim construction "is the process of giving proper meaning to the claim

language." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). Claim

construction is a question of law for the Court to determine. *Markman v. Westview*

*Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

"The actual words of the claim are the controlling focus" when defining the scope

of a patented invention. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344

(Fed. Cir. 1998). In interpreting a claim, the Court should look first to the intrinsic

evidence of record, i.e., the patent itself, including the language used in the claims, the

specification and, if in evidence, the prosecution history. *Vitronics Corp. v.*

*Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citations omitted). "Such

intrinsic evidence is the most significant source of the legally operative meaning of

disputed claim language." *Id.*

"The words of a claim are generally given their ordinary and customary meaning

as understood by a person of ordinary skill in the art when read in the context of the

specification and prosecution history." *Starhome GmbH v. AT & T Mobility LLC*, 743

F.3d 849, 856 (Fed.Cir. 2014) (citations omitted). "There are only two exceptions to this

general rule: 1) when a patentee sets out a definition and acts as his own lexicographer,

or 2) when the patentee disavows the full scope of a claim term either in the

specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669

F.3d 1362, 1365 (Fed.Cir. 2012) (*citing Vitronics*, 90 F.3d at 1580 (Fed.Cir. 1996)).

In addition, each claim term "should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). "Determining the limits of a patent claim requires understanding its terms in the context in which they were used by the inventor, considered by the examiner, and understood in the field of the invention." *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999).

In some instances, the ordinary meaning of a term may be readily apparent such that the claim construction involves little more than the application of the widely accepted meaning of commonly understood words. *Phillips*, 415, F.3d at 1314. In such circumstances, general purpose dictionaries may be helpful to the Court. *Id.*

If the meaning of the claim limitation is apparent from the intrinsic evidence alone, it is improper to rely on extrinsic evidence other than that used to determine the ordinary meaning of the claim limitation. *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268-69 (Fed. Cir. 2001). However, if the court cannot determine meaning after assessing intrinsic evidence, it may look to other evidence such as expert testimony, articles, and inventor testimony. *Id.* at 1269. "This extrinsic evidence may be used only to assist in the proper understanding of the disputed limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history." *Id.* (citations omitted).

9

III.     **ANALYSIS**

A.      **THE PATENTS**

Choon's position is that the claims of the '565 patent and the other patents-in-suit cover a product where the pins and base form a one piece loom.  ECF No. 62 at 9. Tristar disagrees; it argues that all of Choon's claims are limited to multiple piece looms and exclude the one piece Bandaloon.

1.     **The '565 Patent**

The '565 patent is entitled "Brunnian Link Making Device and Kit."  It discloses a kit and method for creating a linked item formed from a series of links, known as "Brunnian" links. '565 patent, 1:1, 2:7-34, 2:28-30.  A Brunnian link is formed from a closed loop doubled over itself to capture another closed loop to form a chain. *Id.* at 1:27-29.  The '565 patent provides examples of linked items such as bracelets, necklaces and other wearable or decorative items. *Id.* at 2:29-30.

Figures 4, 5A, and 5B of the '565 patent illustrate the basic components of the kit:



Figure 4 is a perspective view of one pin bar. Figure 5A is a perspective view of cooperating surfaces of one base and one pin bar. Figure 5B is a perspective view of a pin bar mounted on a base.

The kit includes a "base" 12 that forms a support for "pin bars" 14.  *Id.* at 2:42-43. One or more "pin bars" 14 can be mounted to one or more "bases" 12 to provide a desired configuration.  *Id.* at 2:46-49, 54-57. "Pin bars" 14 each include one or more pins 26. *Id.* at 2:43.

Figure 6 of the '565 patent illustrates an exemplary pin 26:



Figure 6 is a perspective view of one exemplary "pin" 26.  It includes a "flanged top" 38, "mid portion" 46, "bottom portion" 44, and "front access groove" 40.  *Id.* at 3:6-7,

18-19. "Flanged top" 38 and "bottom portion" 44 are each flared outward relative to "mid portion" 46. "Pins" 26 hold "links," such as "elastic bands" 52, 54, 56, in a desired position during assembly of the linked item.

This is shown in Figures 14A-14C:



Figures 14A-14C are perspective views of some process steps in creating a Brunnian linked article, i.e., a chain of linked items using elastic bands 52, 54, 56 and hook tool 16. The views depict a portion of "bar" 42 from which pins 26 extend, and a process of making a chain of linked items from elastic bands 52, 54, 56, with a hook tool 16.

The '565 patent explains that top and bottom flared portions 38, 44 center elastic bands 52, 54, 56 on mid portion 46. *Id*. 3:18-26. The top flared portion 38 prevents errant release of elastic bands 52, 54, 56 during creation of the links. *Id*. 3:10-12, 23-25. Adjacent ends of elastic bands 52, 54, 56, are disposed on a common pin 26. *Id*. at 3:66-4:4. The hook 16 is inserted into access groove 40 of common pin 26 to grasp the end of elastic band 54 and pulls elastic band 54 onto subsequent pin 26 to link elastic bands 54 and 56. *Id*. at 4:9-20. The process is repeated for subsequent elastic bands, 52, 54, 56, until a desired linked item is created. *Id*. at 4:11-22.

Free ends of the linked item are then secured by a clip.  *Id.* at 4:29-33.

### 2.   The '420 and '283 Patent

The '420 and '283 Patents are a continuation of the '565 patent.

### 3.   The '441 Patent

The fourth patent -- the '441 mini-loom -- is a portable device to make similar products.  Two of the terms discussed below involve the '441 patent.

## B.   SOME TERMS WILL BE CONSTRUED TOGETHER

### 1.   "base," "at least one pin bar" and "supported on"

Because they are at the heart of the parties' dispute and because they have several words in common, the Court finds it helpful to construe these three terms together.  Meaning should be given to all words in a claim.  *Exxon v. Lubrizol*, 64 F. 3d 1553, 1557 (Fed. Cir. 1995).  The terms to be construed are considered within the context of the other words in the claim.  *Phillips*, 415 F. 3d at 1314.  Also, each party refers back to their respective suggested constructions of these terms in their arguments on the other terms.

### a.   "base" (the '565 patent; claims 1 & 12)

Choon takes the position that its '565 patent should be broadly read to include the one piece construction that is Tristar's Bandaloom.  Choon's position is that its patent does not require the base and pin bars to be separate.  Choon construes "base" to mean  "the bottom of a structure."  *Choon Opening Claim Construction Brief* 21, ECF No. 58.  It says this construction is consistent with the plain meaning of the term as well as intrinsic and extrinsic evidence.  *Id.* at 15.  In support of its construction, Choon offers

a dictionary definition: "[t]he bottom or lowest part of something." *See* "base," MERRIAM-WEBSTER DICTIONARY, 2015, http://www.miriam-webster.com (last visited April 4, 2016).

But, Choon's construction is overbroad.  It ignores the fact that the base (12) and the pin bar (14) are clearly disclosed, depicted and claimed as separate structures.

Choon's asserts the doctrine of claim differentiation contending that, because Claim 2 implies separate components, Claim 1 must be broader and does cover an integrated configuration.  ECF No. 58 at 19-20. There are two problems with this argument.  As explained below, the asserted claims consistently describe the base as a separate element; thus the intrinsic evidence in the record overcomes any presumption arising from the doctrine of claim differentiation.  *See*, *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000).  Additionally, the doctrine of claim differentiation cannot be used to broaden the independent claim beyond what the inventor actually invented.  *Id*.  The intrinsic record indicates that the inventor only had in mind a "kit" including one or more pin bars and a base at the time of filing this patent application.

Tristar says the context of the patent claims and the specifications make it clear that the base and pin bars are separate structures.  *Tristar Response Claim Construction Brief* 19, June 23, 2015, EFC No. 60.  Tristar's construction is "a structure for supporting one or more pin bars which can be mounted thereon in a desired spatial orientation."  *Id*. at 18.

The Court agrees with Tristar that the base and pin bars are separate structures, but finds a different construction more naturally aligns with the description of the invention.  As used in the patents, the term "base" means "a structure separate from the

pin bar(s): its purpose is to locate or support the pin bar(s). This construction is supported by intrinsic evidence, which is of primary importance. *See*, *Phillips v. AWH Corp.*, 415 F.3d at 1317.

The asserted claims consistently recite the "base" and "pin bar" as separate elements. Tristar is correct that Choon could have drafted the claims to recite "pin bar" as having or including a "base," but it did not do so. Also, *Phillips* instructs the Court to look to other claims to help construe the claim term in question. *Id.* at 1314. Claim 2 supports Tristar's construction that the two are separate. Claim 2 says, "the pin bar and the base [have] corresponding mating features for securing the pin bar to the base." The words "mating features" support a construction that the base and the pin bar are separate elements; they are separately disclosed and claimed. If they were not separate structures, why would the inventor call for "corresponding mating features?"

The specifications also support Tristar's construction. Every embodiment in the written description and figures describes and depicts the "base" and the "pin bars" as separate elements. *See*, '565 patent, 1:39-42; 2:47-49; 2:60-62; 3:36-42; 3:49-61; 4:41-52. See Figs. 1, 5A, 5B, 10B, 11B,10A, 11 A. And, there is no indication anywhere in the specification that the inventor meant the base and pin bar to be a monolithic unit.

While this record contains voluminous extrinsic evidence cited by the parties, it cannot overcome the intrinsic record which clearly discloses that the base and pin bars are separate structures.

In making its determination, the Court notes that part of Tristar's construction includes functional language ("for supporting") concerning how the pin bars may be mounted "in a desired spatial orientation." However, this functional language is not

needed to resolve the underlying dispute, i.e. whether a claimed "base" can be part of a "pin bar."

> **b.   "at least one pin bar"/"pin bar" (the '565 patent; claims 1 & 12)**

Choon construes this term to mean " . . a structure from which a plurality of pins extend." ECF No. 51, at 3; ECF No. 58 at 18.  Choon's construction is overbroad. The term "structure" does not address the more limited "bar" aspect of the claim term. Choon's construction (broadly, "a structure") would cover for example a sphere (or other non-bar-like structures) having pins extending therefrom.  A sphere is not a "bar."

Choon also supports its construction by citing to an International Trade Commission investigation in which the ALJ adopted Choon's construction of the term "pin bar" for the '565 patent.  ECF No. 58 at 14.  This argument is unpersuasive; extrinsic evidence cannot overcome the intrinsic record which makes clear that the base and pin bars are separate structures, and that the claimed "bar" is an elongated member.

On the other hand, Tristar's construction is too narrow.  Tristar's construes the same term to mean "an integral structure separate and distinctly constructed article from the base having a plurality of pins in a single row, spaced equally apart."  ECF No. 58 at 18; ECF No. 60 at 12. The qualifiers "pins in a single row, spaced equally apart" do not appear in claims 1 or 12. Those claims only require a "pin bar including a plurality of pins."  They do not address how the pins are to be positioned on a bar with respect to one another.  It is inappropriate to limit claims to a particular embodiment that the claims themselves do not require.

The key dispute is whether the term "pin bar" inherently requires a "base." This dispute interweaves with the underlying dispute addressed above. The Court finds: (1) "at least one" means "one or more;" and (2) "pin bar" means "an elongated member from which a plurality of pins extend.

Intrinsic evidence supports this construction. The claims do not address the spacing of the pins, or their relative position. The claims recite a ". . . pin bar including a plurality of pins . . ." *See, e.g.,* '565 patent, independent claim 1. Furthermore, the specifications consistently depicts the "bar 14" as an elongated member. It depicts the "pins 26" in a given bar as being spaced evenly in a single row, but the claims do not require this pin configuration.

**c.**    **"supported on" ('565 patent; claim 1)**

Choon construes this term to mean "broadly, integral with or attached to." ECF No. 58 at 22. It says, "[t]he language 'supported on' does not require that the pin bar and base be separate, thus nothing . . . requires or implies that there be separate pin bars and bases." *Id.*

Tristar's construes the term to mean "to hold up or serve as a foundation or prop for." ECF No. 58 at 22.

As noted above, the parties' underlying dispute over this term is resolved with the construction of the terms "base" and "pin bar" as being distinct structures.

**C.   THE REMAINING TERMS ARE CONSTRUED INDIVIDUALLY**

**1.    "supporting at least one pin bar including a plurality of pins to a base to define a desired relative special relationship between at least two adjacent pins" ('565 patent; claim 12)**

Choon construes this term to mean: "holding at least one structure from which a plurality of pins extend to set an orientation between at least two adjacent pins, wherein the pin bar and base may be integral or separate." ECF No. 58 at 32. This is consistent with Choon's construction of "pin bar" and "base." *Id.* (single or multiple parts)

Tristar's construction of this phrase includes its prior construction of the terms "supporting" and "at least one pin bar" and "base" as described above. *See*, ECF No. 60 at 34. Tristar says the phrase "define a desired special relationship" is "user-selected combination of pin bars and bases to form a custom desired distance between pins" *Id.*

The key dispute is whether the statement of purpose "to define a desired relative special relationship between at least two adjacent pins" imposes a structural limitation on the "pin bar" and if so, whether the structure "at least one pin bar including a plurality of pins" is monolithic, meaning a pin bar inherently has the claimed "base" as a part of that structure.

The Court concludes that the term "supporting at least one pin bar . . . *to* a base . . ." (emphasis added) conveys no meaning; and that "adjacent pins" includes pins in the same bar or pins opposite each other when their respective bars are juxtaposed.

The intrinsic support for this construction is in the claim language and specifications discussed above. There is no need to resort to extrinsic evidence.

### 2. "a top flared portion for holding a link in a desired orientation" ('565 patent; claim 1)/ "a top portion for holding a link in a desired orientation" ('420 patent; claims 1 & 3)

Choon's construction is this: "the pins have a portion that projects outward near an end spaced from the base capable of holding a link in a desired orientation on the pin during creation of a linked item." ECF No. 58 at 24.

Tristar's construction is: "the top of the pin which is flanged in order to keep an elastic band properly spaced and further designed to prevent the elastic band from releasing during use." ECF No. 58 at 25; ECF No. 60 at 28. Tristar says the functional recitation "for holding" requires no structural limitation and carries no patentable weight. ECF No. 60 at 30. Tristar also contends that a "link" is a "continuous looped structure without forming an actual knot." ECF No. 62 at 4.

Choon's construction fails to account for the term "flared" in claim 3 of the '420 patent. On the other hand Tristar's construction overlooks the term "portion" which is broader than "the [very] top of the pin." And, its proposed construction of "flanged" does not capture the meaning of "flared." Not all flanges are "flared" flanges, which expand or spread outwardly.

The Court concludes the term "top flared portion" means "a flanged projection at or near the top of the pin." This construction finds support in the specification which recites: "[e]ach pin 26 includes the flanged top 38 that is flared outward to prevent errant release . . . the top flared portion 38 . . ." '565 patent, 3:10-12; 23-25. Additionally, "flange" means "a rib or rim for strength, for guiding or for attachment to another object." *See* "flanged," MERRIAM-WEBSTER DICTIONARY, 2015, http://www.miriam-webster.com (last visited April 4, 2016). The term "top portion" means "a portion at or near the top of the pin." Finally, the phrase "for holding a link in a desired orientation" does not require construction.

There is intrinsic support for this construction. The claims recite "top portion" as opposed to merely "top." Term "top portion" implies a region distinct from the middle and lower region, but not limited to the very top. Secondly, the '565 patent requires that

the "portion" be "flared;" the '420 patent does not.  Each claim term must be given

meaning.  *Lubrizol*, 64 F.3d at 1557.  '565 claims should be construed more narrowly

than the '420 claims to address the term "flared."

The '420 dependent claim 3 requires: "the top portion comprises a flared portion .

. ."  *See*, Chart, *supra* at 3.  The doctrine of claim differentiation applies, because this is

the only limitation added to the dependent claim.  " . . . the doctrine of claim

differentiation creates a presumption that distinct claims, particularly an independent

claim and its dependent claim have different scopes." *World Class Tech. Corp,* 769 F.3d

1120, 1125 (Fed. Cir. 2014).

Additionally, the Court finds that no construction is necessary for "for holding a

link in a desired orientation," since the parties do not present a material claim

construction dispute.

The structure's function ("for holding . . .") is arguably a mere statement of

purpose or intended use. This term is not a structural limitation and thus carries no

patentable weight. *Hewlett-Packard Co.*, 909 F.2d at 1468. There is no need to resort to

extrinsic evidence; the meaning of the terms is clear.  If it matters, the structure "top

portion" is construed as having the capability of performing the recited function,

"holding."  However, this language does not go to the essence of the invention or

provide a limitation.  *Contra, In re Jasinski*, 508 F. App'x 950, 952 (Fed. Cir. 2013).

The specification explains that "each pin 26 includes the flanged top 38 that is

flared outward to prevent errant release of a rubber band during creation of a link." '565

patent, 3:10-12.  Fig. 6 shows a circumferential chamfer[1] at the top, such that the projection is near the top, but not at the very top.

> **3.    "at least one clip including inward facing ends … for securing ends of the series of links together"/"at least one clip . . .  for securing ends of the series of links together" ('441 patent; claim 11)**

Choon's construction of the first phrase is "at least one connector that is capable of securing a series of elastic closed loops with the terminal portions proximate an opening for securing links together."  Choon disagrees with Tristar that the clip is c-shaped and says there are other forms of clips, such as an s-clip, that have inward facing ends.  ECF No. 58 at 45.

Choon's construction of the second phrase is: "a connector that is capable of securing ends of a series of elastic closed links together."  ECF No. 58 at 40.  Choon interprets "a series of links" as "a series of elastic closed loops."  ECF No. 56 at 41.

Tristar says the Court should give the plain and ordinary meaning of clip – "a c-shaped clip."  ECF No. 58 at 45; ECF No. 60 at 34 and 39, it also contends that "[f]or securing ends of the series of links together" is not a positive structural limitation and should be accorded no patentable weight.  ECF No. 58 at 31. Tristar says "a series of links" means "a continuous looped structure without forming an actual knot."  ECF No. 56 at 41; ECF No. 60 at 40.  In support, Tristar says Claim 11 does not include a limitation that the series of links is elastic.  ECF No. 60 at 39.

---

[1] A chamfer means to cut a furrow in (as a column). See, "chamfer," MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/chamfer) (last visited April 19, 2016).

The Court finds that "clip" means "connector," and "at least one clip" means "one or more connectors."  The plain and ordinary meaning prevails.  Further, "for securing" is a functional recitation and thus merely a statement of purpose or intended use.  However, to the extent the language refers to the essence of the invention, the structure ("clip") is construed so that it is capable of performing the recited function ("for securing . . .").

Intrinsic support for this construction is found in Claim 11 of the '441 patent which calls for " . . . at least one [i.e., one or more] clip [i.e., a connector] including inward facing ends . . . for securing ends of a series of links together . . ."  *See*, '441 patent, specification numeral 16; Figs. 1 and 7.

The Court adopts Choon's construction of "a series of links."  No claim requires the link be devoid of a knot.

There is no need to rely on extrinsic evidence; intrinsic evidence suffices.

### 4.      "each of the posts include a first arm and a second arm and an access slot disposed there between"

At the Markman hearing, the parties withdrew the first portion of this term from consideration.  Tr. 3, ECF No. 64. The portion that says "each of the posts include a first arm and a second arm and an access slot disposed there between" is disclaimed.  *Id*.

### 5.      "each of the posts include an access slot defined between a first arm and a second arm" ('441 patent; claim 11)

Choon's construction of "access slot" is "a slot extending between the two arms, and allowing for a tool to contact the links."  ECF No. 58 at 43. Tristar's construction of "access slot" is "an opening between two arms."  ECF No. 60 at 41.

The parties dispute whether the terms may be construed to include mention of a "tool." Tristar says a tool is not mentioned in claim 11 and Choon is attempting to improperly import a claim limitation from the specification. Tr. 78: 1-3. Choon says its inclusion of tool makes sense because the word "access" is to allow a tool to contact the links and the word "access" must have some meaning. Tr. 78: 15-16.

Choon's construction is not supported by claim 11; a tool is not mentioned.

The Court construes "each of the posts include an access slot defined between a first arm and a second arm" as "each post has a pair of arms with a slot between them." The plain and ordinary meaning prevails.

### 6. "plurality of pins … for holding a link in a desired orientation" ('565 patent, claim 1)

Choon says this term means "more than one structure capable of supporting a link." ECF No. 58 at 23. Choon says ". . . the specification does not require that the plurality of pins be in a single row on a pin bar." *Id.*

Choon's construction is too broad; "more than one structure capable of supporting a link" embraces many meanings and "structure" may be susceptible to various interpretations. The claims do not require that the plurality of pins be in a single row on a pin bar. The claims in relevant part require that " . . . [the pins hold] a link in a desired orientation . . .". *See, e.g.,* '565 patent, claim 1.

On the other hand, Tristar's construction is: "two or more pins located in a single row on a pin bar." ECF No. 60 at 25. Tristar says the words "for holding a link in a desired orientation" does not recite a positive structural limitation, and thus should not be accorded patentable weight.

23

Tristar's construction is too narrow; there is no claim limitation for a single row. Finally, the term "for holding a link in a desired orientation" is discussed earlier.

The Court's construction is as follows:  the first phrase, "plurality of pins" means "two or more pins."  *See*, '565 patent at 5:13-14. *See also*, 2:4-5; Figs. 4, 5A – B, 6. And, the phrase "for holding" requires that the structure ("pin") be construed as being capable of performing the recited function ("for holding . . .") and thus adds an implicit structural limitation.

Intrinsic support for this construction is found in the claims.  The phrase "for holding" in claim 1 of the '565 patent directly follows the "top flared portion." So this structure has a defined purpose and therefore must implicitly have a structure that enables it to fulfill its purpose.

Further, the specification explains that "[e]ach pin 26 includes the flanged top 38 that is flared outward to prevent errant release of a rubber band during creation of a link." '565 patent, 3:10-12.

Again, there is no need to reference extrinsic evidence; the meaning of these phrases is clear based on the intrinsic evidence.

## IV.     CONCLUSION

The Court's claim constructions are as set forth in the Chart on page 3 of this Order.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 21, 2016

24

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 21, 2016.

s/Linda Vertriest
Deputy Clerk